UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Maurice Edward Rubin,

              Petitioner,

    vs.                        REPORT AND RECOMMENDATION

Dean Mooney, Director
of the Minnesota Sex
Offender Program,

              Respondent.      Civ. No. 05-919 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see, Title 28 U.S.C. §2254, which alleges that the Petitioner is being illegally detained, by the Respondent, for reasons which violate his rights under the Constitution, laws, or Treaties of the United States. The Petitioner has appeared pro se, and the Respondent has appeared by Angela M. Helseth, Assistant Minnesota Attorney General. For reasons which follow, we recommend that the Petition be dismissed with prejudice.

## II.  Factual and Procedural Background

The Petitioner is currently confined for treatment, and for public protection, with the Minnesota Sex Offender Program, in Moose Lake, Minnesota, pursuant to a civil commitment.   The Petitioner was civilly committed, as a Sexual Psychopathic Personality ("SPP"), and as a Sexually Dangerous Person ("SDP"), in accordance with Minnesota Statutes Section 253B.02, Subdivisions 18b, and 18c, on July 18, 2001.  See, Respondent's Appendix ("RA"), at 1-40.   On February 14, 2002, the Trial Court ordered that the Petitioner be indeterminately committed,[1] and that decision was affirmed by the Minnesota Court of Appeals.  See, In re Civil Commitment of Rubin, No. C5-02-570, 2002 WL 31111248 (Minn. App., September 24, 2002), rev. denied (Minn., November 27, 2002).   At no time during the course of those proceedings, did the Petitioner raise a claim concerning his right to a Jury Trial.

On September 10, 2003, the Petitioner filed a Petition with the State District Court, for a Writ of Habeas Corpus.  RA at A61-81.  His Petition asserted that he was

---

[1]Under Minnesota's Sexual Psychopathic Personality Statute, after the Trial Court renders its initial decision to commit an individual as a SPP, the individual returns to Court, within ninety (90) days, for a review Hearing.  At that time, if the person continues to meet the criteria for commitment, the commitment is made in-determinate.  Minnesota Statutes Section 253B.18, Subdivisions 1 and 2; Minnesota Statutes Section 253B.185.

entitled to a Jury Trial under Article 1, Section 4, of the Minnesota Constitution.  <u>RA</u>

at 70.  The Petitioner expressly disclaimed any issue arising under the United States

Constitution.   See, <u>RA</u> at 64 n.3 ("Because the Petitioner focuses exclusively on the

right to a jury trial under the Minnesota Constitution, the right to a jury trial under the

Seventh Amendment, or under the Due Process Clause of the Fifth and Fourteenth

Amendments, is beyond its scope ").  In a subsequent responsive filing, the Petitioner

contended -- for the first time -- that he was wrongfully denied a Jury Trial, in violation

of the Fifth, Seventh, and Fourteenth  Amendments  to the United States Constitution.

See, <u>RA</u> at 100-104.  The Petitioner asserted, in part, that:

> The State of Minnesota continues to deprive persons
> accused of having "mental/personality disorders" of their
> right to a jury trial, which results in a loss of life, liberty, and
> property.  This unjustifiable state constitutional deprivation
> exacts extreme discrimination and prejudice.  The State of
> Minnesota affords criminals facing possible loss of liberty
> than  citizens  facing  non-criminal  civil  confinement
> indefinitely, potentially a life sentence.   This unequal
> application of the law in civil confinement court-
> proceedings violates due process and is an errant violation
> of the equal protection-equal application provisions of both
> the Untied States and Minnesota Constitutions, and Art. I,
> sec. 4 of the 1857 Minnesota Constitution and Article III,
> sec. XXIII, et seq. of the Territorial Laws of Minnesota
> 1851.

<u>RA</u> at 104.

On December 10, 2003, the State District Court denied the Petitioner's Habeas Petition, noting that the Minnesota Supreme Court had repeatedly rejected the claim that the Minnesota Constitution guarantees a right to a Jury Trial in civil commitment matters.  See, RA at 106-110, citing State ex rel. Pearson v. Probate Court, 287 N.W. 297, 303 (Minn. 1939), aff'd, 309 U.S. 270 (1940)(rejecting claim that Minnesota Constitution guaranteed a jury Trial in psychopathic personality commitment cases). The State District Court also concluded that the Petitioner was procedurally barred from raising his Jury Trial issue in the Habeas proceedings, by having failed to raise it initially during his commitment proceedings, and the subsequent appeals process. See, RA at 110.

In addition, the State District Court rejected the Petitioner's Seventh Amendment and due process claims, and noted, in part:

> The Eighth Circuit concluded that the Minnesota state court decision declining to grant a jury trial is not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  See Poole v. Goodno, 335 F.3d 705 (8th Cir. 2003).   Additionally the Eight Circuit Court held that there is no clearly established Supreme Court law which holds that due process requires a jury trial in civil commitment proceedings or that incorporates the Seventh Amendment  right to a jury for such cases.

See, RA at 109-110.

- 4 -

The Court did not address any of the Petitioner's arguments regarding the equal protection claim, which were raised in his responsive filing.

The District Court's decision was affirmed, without addressing any of the Petitioner's newly asserted claims under the United States Constitution, by the Minnesota Court of Appeals in an unpublished opinion. See, <u>Rubin v. Mooney</u>, Case No. A04-101 (Minn. App., May 6, 2004), rev. denied (Minn., June 15, 2004).   <u>RA</u> at 225-27, 239.  The United States Supreme Court denied certiorari on December 6, 2004.  See, <u>McDeid v. Mooney</u>, 543 U.S. 1024 (2004)(concurrently denying Writ of Certiorari for eleven (11) Habeas petitioners, including the Petitioner, here).

On May 13, 2005, the Petitioner then commenced this Federal Habeas proceeding.

III.  <u>Discussion</u>

A.    <u>Statute of Limitations</u>.

1.    <u>Standard of Review</u>.  On April 24, 1996, President Clinton signed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which effected significant changes in the Federal Habeas Corpus statutes.  One of those changes was incorporated into Title 28 U.S.C. §2244(d), which established a new, one-year statute of limitations for Habeas Corpus Petitions, which are filed by State prisoners who seek

a Federal Court's review of a State Court conviction or sentence.  The new provision

reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court.  The limitation period shall run from the latest of --
>
> > (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Title 28 U.S.C. §2244(d).

- 6 -

As a consequence, a State prisoner, who seeks Federal Habeas Corpus review from his State conviction, or sentence, ordinarily must file his Petition within one year after his Judgment of conviction "became final by the conclusion of direct review."  Title 28 U.S.C. §2244 (d)(1).  The applicability of Title 28 U.S.C. Section 2244 extends to persons held pursuant to civil commitment proceedings, as well as to persons held under criminal conviction.  See, Duncan v. Walker, 533 U.S. 167, 176 (2001).

The statute provides, however, that this deadline can be modified if:  1) the prisoner is unable to file his Federal Habeas Corpus Petition in a timely manner because of an impediment that was imposed by the State; 2) the prisoner is relying on some newly recognized constitutional right that is retroactively applicable; or 3) the prisoner is relying on some new evidence which could not have been reasonably discovered in time to file a timely Petition.  See, Title 28 U.S.C. §2244(d)(1)(B)-(D).

The statute of limitations also includes a tolling provision, which stops the running of the one-year limitations period while the prisoner is pursuing a "properly filed" application for Post-Conviction Relief in the State Court.  See, Title 28 U.S.C. §2244(d)(2).  Our Court of Appeals has expressly held, however, that the period between the completion of the direct review of the State Court Judgment, and the application for post-judgment relief, is counted towards the one-year limitation period.

See, Maghee v. Ault, 410 F.3d 473, 475 (8th Cir. 2005); Curtiss v. Mount Pleasant Correctional Facility, 338 F.3d 851, 853-55 (8th Cir. 2003), cert. denied 540 U.S. 1060 (2003); Painter v. Iowa, 247 F.3d 1255, 56 (8th Cir. 2001)("A review of our cases makes clear, however, that the time between the date that direct review of a conviction is completed, and the date that an application for state post-conviction relief is filed, counts against the one-year period.").

   2. Legal Analysis. Under the circumstances here, the one-year statute of limitations began to run, pursuant to Section 2244(d)(1)(A), when the Petitioner's civil commitment Judgment became final. The Petitioner's civil commitment Judgment became final on February 25, 2003 -- which is ninety (90) days after the Minnesota Supreme Court denied the Petitioner's request for further review, during which period, the Petitioner could have sought a Writ of Certiorari from the United States Supreme Court. See, Title 28 U.S.C. §2244(d)(1)(A)("The limitation period shall run from * * * the date on which the judgment became final by the conclusion of direct review **or the expiration of the time for seeking such review**.")[emphasis added]; Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998), cert. denied, 525 U.S. 1187 (1999)(The running of the statute of limitations for purposes of Section 2244(d)(1)(A) is triggered by the completion or denial of certiorari proceedings before the United States Supreme

Court or, "if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the [90 days] allowed for filing a petition for the writ.").

As we have noted, the Petitioner also filed a State Habeas Petition on September 10, 2003, and that Habeas Corpus proceeding concluded on December 6, 2004, when the United States Supreme Court denied certiorari.   Accordingly, under Section 2244(d)(1), AEDPA's one-year statute of limitations began to run on February 25, 2003, and it would have expired on February 25, 2004.  However, pursuant to Section 2244(d)(2), the statute of limitations was tolled during the post-conviction appellate proceedings, which lasted from September 10, 2003, through December 6, 2004 -- a total of 453 days.  Accordingly, under Section 2244(d)(1) and (2), the period in which the Petitioner could timely file his Habeas Petition expired on May 25, 2005.  We conclude, therefore, that the Habeas Petition was timely, as it was filed on May 13, 2005.

     B.    <u>Exhaustion and Procedural Default</u>.

     1.    <u>Standard of Review</u>.  It is well-established that a Federal Court will not entertain a Petition for a Writ of Habeas Corpus on behalf of a State prisoner unless the prisoner has first exhausted all available State Court remedies.  See, <u>Title 28</u>

U.S.C. §2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982); see also, Armstrong v. State of Iowa, 418 F.3d 924, 925-26 (8th Cir. 2005)("Federal habeas relief is available to a petitioner after he 'has exhausted the remedies available in the courts of the State.'"), quoting Title 18 U.S.C. §2254(b)(1)(A).  The exhaustion of State remedies requirement is based on principles of comity and federalism, as its purpose is to ensure that State Courts are given the first opportunity to correct alleged Federal constitutional errors raised by State prisoners.  O'Sullivan v. Boerckel, supra at 844; Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Rose v. Lundy, supra at 518-19; Curtiss v. Mount Pleasant Correctional Facility, supra at 855 ("The exhaustion requirement serves AEDPA's goal of promoting 'comity, finality, and federalism,' by giving state courts 'the first opportunity to review [the] claim,' and to 'correct' any 'constitutional violation in the first instance.'"), quoting Carey v. Saffold, 536 U.S. 214, 220 (2002).

In order to exhaust his State Court remedies, a prisoner must fairly present his constitutional claims to the highest available State Court before seeking relief in Federal Court.  O'Sullivan v. Boerckel, supra at 845; Duncan v. Henry, supra at 365-66; see also, Dixon v. Dormire, 263 F.3d 774, 777 (8th Cir. 2001); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997)("[B]efore we may reach the merits of a habeas petition,

we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court.").  The exhaustion of State remedies requires more than the fact that the Federal Habeas applicant has been through the State Courts.  See, Picard v. Connor, 404 U.S. 270, 275 (1971).  To serve the purpose of the rule, the State Courts must have the first opportunity to hear the claim sought to be vindicated in a Federal Habeas proceeding.  Id. at 275-76.  The State Court has an opportunity to hear a claim, when the claim has been fairly presented, by reference to a specific Federal constitutional right, a Federal case, or a State case, raising a pertinent Federal constitutional issue.  See, Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996), cert. denied, 517 U.S. 1215 (1996).  Claims are exhausted only when the same factual underpinnings, and legal theories, were first properly raised in the State Courts.  Id.

Under Minnesota law, "[o]nce a defendant has had a direct appeal, 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief."  Zenanko v. State, 587 N.W.2d 642, 644-45 (Minn. 1998), quoting State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976).  If the Petitioner has failed to exhaust his State Court remedies, and if the Court to which he should have presented his claim would now find it procedurally barred, the

claim is procedurally defaulted.  See, <u>Sloan v. Delo</u>, 54 F.3d 1371, 1381 (8th Cir. 1995), citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n. 1 (1991).  In addition, if a Petitioner has attempted to raise a claim in State Court, but the State Court determines that the Petitioner has defaulted the claim under a State procedural rule, Federal Courts will not, as a general proposition, consider the claim on Habeas review.  See, <u>Coleman v. Thompson</u>, supra at 750; <u>Sloan v. Delo</u>, supra at 1378.

Accordingly, "[a] default under a state procedural rule bars consideration of a federal claim presented to the state courts if the last state court to review the claim specifically rested its decision on an adequate and independent state ground * * *." <u>Sloan v. Delo</u>, supra at 1378, citing <u>Harris v. Reed</u>, 489 U.S. 255, 260-63 (1989).  A claim that is procedurally defaulted under State law, however, is barred from Federal review only if the State procedural rule is firmly established and regularly followed. See, <u>Oxford v. Delo</u>, 59 F.3d 741, 744 (8th Cir. 1995), citing <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991); see also, <u>Harris v. Reed</u>, supra at 262 ("[A]n adequate and independent finding of procedural default [as a matter of State law] will bar federal habeas review of the federal claim").

Although the State Court procedural bar is "nearly absolute," a Petitioner can avoid the bar if he "demonstrate[s] cause for the default and actual prejudice as a

result of the alleged violation of federal law." <u>Reagan v. Norris</u>, 279 F.3d 651, 656 (8th
Cir. 2002), quoting <u>Coleman v. Thompson</u>, supra at 750.

Furthermore, a Habeas Petitioner must exhaust his State Court remedies with
respect to **all** of the claims that he wishes to raise in a Federal Habeas Corpus Petition.
A "mixed petition" -- i.e., one that includes both exhausted and unexhausted claims --
will be dismissed for non-exhaustion, or stayed, under certain circumstances, to allow
the exhaustion of State remedies.  <u>Rose v. Lundy</u>, supra at 510, 522; see also, <u>Akins</u>
<u>v. Kenney</u>, 410 F.3d 451, 456 (8th Cir. 2005)("In order to determine whether a stay
pending exhaustion would be appropriate in this case, [petitioner] must be given an
opportunity to demonstrate good cause for his failure to exhaust his claims first in
state court, to show that his unexhausted claims are not 'plainly meritless,' and to
demonstrate that he has not engaged in abusive litigation tactics or intentional delay."),
citing <u>Rhines v. Weber</u>, 544 U.S. 269, ---, 125 S.Ct. 1528, 1535 (2005).

However, our Court of Appeals has also concluded that, "if no state court
remedy is available for the unexhausted claims -- that is, if resort to the state courts
would be futile -- then the exhaustion requirement in §2254(b) is satisfied, but the
failure to exhaust 'provides an independent and adequate state-law ground for the
conviction and sentence, and thus prevents federal habeas corpus review of the

defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default' (or actual innocence, which is not at issue in this case)."  Armstrong v. State of Iowa, supra at 926, quoting Gray v. Netherland, 518 U.S. 152, 162 (1996). If a petitioner cannot provide cause and prejudice for his default, in the absence of a claim of actual innocence, a Federal District Court can "properly dismiss[] [the petitioner's] federal claims with prejudice."  Id., supra at 927 [emphasis in original].

       2.   Legal Analysis.  Here, the Respondent contends that the Petitioner has "undoubtedly exhausted his state court remedies with respect to his claim based on the * * * Minnesota Constitution," but "has just as clearly not exhausted his state remedies with respect to his two federal claims."  See, Memorandum in Support of Answer to Petition, Docket No. 5, at 17.  In his Petition, the Petitioner asserts three (3) grounds for granting his Petition:  the right to a Jury Trial, based on the Minnesota Constitution; an  Equal Protection violation arising under the Fourteenth Amendment of the United States Constitution; and a Due Process Claim arising under the Fifth and Fourteenth Amendments.  See, Petition, at 5-11.  Specifically, with respect to his Equal Protection claims, the Petitioner contends that "denial by the Minnesota Supreme Court of the right to a jury trial for civil litigants in Minnesota civil commitment/guardianship proceedings violates equal protection because all other civil

<u>litigants</u> in Minnesota who had the right to a jury trial in 1857 <u>still have that right</u> <u>inviolate under the Minnesota Constitution today</u>," and that "the lower court did not address, and the State did not proffer, an important compelling reason to discriminate between categories of civil litigants entitled to jury trials under the Territorial Laws of 1857." <u>Id.</u> at 6 [emphasis in original].

Furthermore, with respect to his due process claims, the Petitioner asserts that "Petitioner's civil commitment without the right to trial before a jury of his peers violates Petitioner's right to Due Process of Law," and that "[t]he Minnesota Supreme Court failed to do the constitutionally-required historical analysis to determine if the right to a jury trial exists under the Minnesota Constitution in non-criminal 'civil' cases when serious deprivations of liberty and property are at risk." <u>Id.</u> at 6-7.   The Petitioner also argues that his lack of a Jury Trial, in his civil commitment proceedings, violated the Minnesota Constitution.  <u>Id.</u> at 5.

a.   <u>The Equal Protection Claim</u>.  While the Petitioner maintains that he advanced the same equal protection argument in his State Habeas proceedings, as those presented in his Federal Habeas Petition, we cannot agree,  as our reading of the grounds, which the Petitioner has presented in his current Petition, are different from those that were presented at his State Post-Conviction Hearings.   Specifically, in

- 15 -

regard to his equal protection claim, as it was presented in his responsive filings in the

State Post-Conviction proceedings,[2] the Petitioner contended that the State afforded

**accused criminals** "greater due process protections of their liberty," than those

facing civil commitment.  See, RA at 102-104.  Here, his equal protection claim would

seem to be founded upon a different treatment between **civil** litigants.  See, Petition,

at 6. In his responsive Federal Habeas filing, the Petitioner noted that, in regard to his

equal protection argument, "[i]n the instant case, the lower court did not address, and

the State did not proffer, an important compelling reason to discriminate between

categories of civil litigants entitled to jury trials under the Territorial Laws of 1857."

See, Petitioner Memorandum In Response to Respondents Answer, Docket No. 8, at

8.[3]

---

[2]We note that the equal protection claims were not presented in his initial State Habeas Petition, and were not substantively addressed by any of the reviewing State Courts through the post-conviction appellate process, as the reviewing State Courts found that the Petitioner's claims were procedurally barred.  See, RA at 110.

[3]In support of the Petitioner's statement, he appears to cite an opinion of an unrelated case before the Minnesota Court of Appeals.  See, Petitioner Memorandum in Response to Respondents Answer, at 8.  We note that several of the Petitioner's arguments address issues that are not currently before this Court.  With the aid of electronic filing, we are able to review the contents of the pleadings before the Court in McDeid v. Mooney, 2005 WL 2250780 (D. Minn. August 29, 2005).  By comparison, the Petitioner's pleadings appear, substantively, to be near verbatim

(continued...)

Given the very different classifications that the Petitioner has challenged in asserting equal protection violations in his State and Federal Habeas claims, we find that the equal protection claim before us was never properly presented before the State Court. See, <u>Buckley v. Lockhart</u>, 892 F.2d 715 (8th Cir. 1989), cert. denied,497 U.S. 1006 (1990)(noting that a claim of ineffective assistance of counsel that asserted a failure to mount a claim in a Federal Habeas proceeding was not fairly  presented in the State Habeas Petition, which asserted a claim of ineffective assistance of counsel grounded on a failure to dismiss a juror for cause and a failure to request a continuance).   In addition, the State Courts had previously determined that any constitutional challenges to the lack of a jury trial were procedurally barred from being raised in any post-conviction Habeas proceedings, as the Petitioner had not raised the issue during his direct appeal.  See, <u>RA</u> at 110, citing  <u>State ex rel Gilbert v. Carver</u>, 172 N.W. 771, 772 (Minn. 1919), and <u>State ex rel. Giller v. Rice</u>, 177 N.W. 348, 348 (Minn. 1920).

---

[3](...continued)
copies of the pleadings in <u>McDeid</u>, inclusive of the same type of font, pagination style, paragraph headings, and legal analysis.   Throughout the Petitioner's Reply Memorandum, he continually makes references to the State Court decisions of <u>McDeid</u> which, in the context of the Petitioner's arguments, approach the nonsensical on occasion.

As a result, the State Courts have not had an opportunity to correct the Petitioner's alleged constitutional errors, with respect to the referenced claims.  See, O'Sullivan v. Boerckel, supra at 844.  Also, the Petitioner has not presented any new evidence proving his actual innocence, so as to excuse his procedural default.  However, the Petitioner appears to contend that his apparent procedural default is excused, pursuant to the United States Supreme's Court's holding in Reed v. Ross, 468 U.S. 1, 16 (1984), as "cause" exists when a "constitutional claim is so novel that its legal basis is not reasonably available to counsel."  Here, the Petitioner contends that his "'constitutional claim [is] so novel' [that] it has not been reasonably available to any one for over 64 years."  See, Petitioner Memorandum In Response to Respondents Answer, Docket No. 8, at 7.

However, the crux of the Petitioner's argument -- namely, that a right to a Jury Trial in civil commitment proceedings was established by Minnesota territorial law in 1857 -- has been decisively resolved, and was upheld by the United States Supreme Court.  See, State ex rel Pearson v. Probate Court, supra at 302.  Furthermore, other Courts, both Federal and State, have recently upheld equal protection challenges to Minnesota's SPP and SDP proceedings, in cases brought prior to the Petitioner's Federal Habeas Petition.  See, e.g., Poole v. Goodno, 335 F.3d 705, 711 n. 5 (8th Cir.

2003)(declining to address the petitioner's claim that the lack of a jury trial in SPP or SDP proceedings was an equal protection violation as it was not before the Court on appeal); <u>Bailey v. Gardebring</u>, 940 F.2d 1150, 1153 (8th Cir. 1991), cert. denied, 503 U.S. 952 (1992)(finding no equal protection violation); <u>In re Blodgett</u>, 510 N.W.2d 910, 916-17 (Minn. 1994)("Nor do we think the psychopathic personality statute violates equal protection under either the federal or state constitution").  As there is no indication that <u>Pearson</u> is no longer precedential, and the Minnesota SDP and SPP statutes have withstood similar equal protection attack on multiple occasions, we do not find the Petitioner's argument to be "so novel" as to excuse his procedural default.

Even if we were not procedurally barred from addressing the Petitioner's equal protection claim, we would still recommend dismissal on its merits.  In a substantially similar case, in which a petitioner argued that the lack of a jury trial in civil commitment proceedings under the applicable Minnesota Statutes gave rise to an equal protection claim, a Federal District Court found no such violation.  See, <u>Poole v. O'Keefe</u>, 2002 WL 550961 at *3 (D. Minn., April 10, 2002), aff'd, <u>Poole v. Goodno</u>, supra.  There, the petitioner argued that the lack of a Jury in his civil commitment proceedings was a violation of equal protection, and he premised his argument by noting that,"two of

his [criminal sexual misconduct] victims had a right to a jury trial in their civil suits against Poole whereas he did not have such a right in the commitment proceeding." See, Report and Recommendation, Poole v. O'Keefe,, 2002 U.S. Dist. LEXIS 13048 *15 (D. Minn., February 13, 2002), adopted, Poole v. O'Keefe, 2002 WL 550961 (D. Minn., April 10, 2002), aff'd, Poole v. Goodno, supra.   However, the Report and Recommendation recognized that the appropriate standard of review for an equal protection claim required that the petitioner assert that he was being treated differently than other similarly situated persons.  Id. at *16, citing F. S. Royster Guano Co. v. Commonwealth of Virginia, 253 U.S. 412, 415 (1920).   The Report and Recommendation, which was subsequently adopted in its entirety, noted that "[a] person subject to commitment proceedings as a sexually dangerous person or a sexually psychopathic personality is not similarly situated to a civil plaintiff suing her assailant for damages."  Id.  We find the logic underlying that reasoning  to be compelling, given the striking similarity between the Petitioner's equal protection claim here, and the ultimate resolution of the Court in Poole.

For all of the foregoing reasons, we recommend that the Petitioner's equal protection claim should be dismissed.

b.     <u>Due Process Claim</u>.   Here, it is unclear as to what Due Process injury the Petitioner is actually alleging.   He contends that "Petitioner's civil commitment without the right to trial before a jury of his peers violates Petitioner's right to Due Process of Law," and that, "[t]he Minnesota Supreme Court failed to do the constitutionally-required historical analysis to determine if the right to a jury trial exists under the Minnesota Constitution in non-criminal "civil" cases when serious deprivations of liberty and property are at risk."   <u>Petition</u>, at 6-7.   However, the Petitioner fails to rebut the Respondent's arguments -- or present any argument whatsoever -- in regards to his Due Process claim, in his responsive filings.

If we interpret his Due Process claim as one encompassing a challenge to the Minnesota Supreme Court's legal analysis, and interpretation of the Minnesota Constitution, as urged by the Respondent, then that claim was certainly not presented to the State Courts in any of the Post-Conviction proceedings, and is, accordingly, procedurally defaulted.   See, <u>Sloan v. Delo</u>, supra at 1381, citing <u>Coleman v. Thompson</u>, supra at 735.   Furthermore, even if we were to reach the merits of that issue, we would hold that a review of a State Court's interpretation of a State law question, that arises under that State's Constitution is not proper in a Federal Habeas proceeding.   See, <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)("[W]e reemphasize

- 21 -

that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions, * * * [and that] [i]n conducting a habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Accordingly, "'[a] federal court may not re-examine a state court's interpretation and application of state law.'" McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996)(quoting Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir.1994)); see also, Brown v. Luebbers, 371 F.3d 458, 466 (8th Cir. 2004), citing Estelle v. McGuire, supra at 67-68.

If, instead, we construe the Petitioner's claim as contending that the lack of a Jury Trial, in Minnesota SPP and SDP civil commitment proceedings, violates the Due Process clause of the United States Constitution, we also conclude that the claim has no merit. The State District Court noted that the "Petitioner's opportunity to raise his constitutional objection to the lack of jury trial opportunity was to raise it at trial and on appeal" and, "[b]ecause he failed to do so, he is precluded from raising it in this habeas proceeding." RA at 110, quoting State ex. rel. Munnell v. Rigg, 110 N.W.2d 294, 296 (Minn. 1961)("[M]atters which are subject to review on appeal [are] not properly before us in habeas corpus proceedings"); Breeding v. Utecht, 59 N.W.2d 314, 316 (Minn. 1953)("The fact that the petitioner has permitted the time to elapse for

- 22 -

an appeal or writ of error gives him no right to use habeas corpus as a substitute."); see also, <u>State ex rel. Butler v. Swenson</u>, 66 N.W.2d 1, 4 (Minn. 1954).

It appears that the State District Court was relying upon the rule, that was more recently reiterated in <u>State v. Knaffla</u>, 243 N.W.2d 737, 741 (Minn. 1976), which precludes State Courts from entertaining prisoner claims that were raised, or could have been raised, on a prior direct appeal, and which established that, "once a petitioner has directly appealed a conviction, all matters raised in that appeal, and all matters that were known but not raised, will not be considered upon a subsequent petition for postconviction relief."

Our Court of Appeals has found the <u>Knaffla</u> rule to be a well-established State procedural rule which, when cited by a Minnesota State Court, triggers the application of the procedural default doctrine in a subsequent Federal Habeas proceeding.  As the Court noted, in <u>McCall v Benson</u>, supra at 757, quoting <u>State v. Knaffla</u>, supra at 741, "Minnesota law provides that once the petitioner has directly appealed his sentence 'all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.'"

Here, the State District Court expressly declined to reach the merits of the Petitioner's claims.  See, <u>RA</u> at 110 ("Even if this Court could consider Petitioner's

arguments, this Petition is barred procedurally").   Given the <u>Knaffla</u> rule, the Petitioner's due process claims have been procedurally defaulted for Federal Habeas purposes.  See <u>Clemons v. Luebbers</u>, 381 F.3d 744, 750 (8th Cir. 2004) ("A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds"), cert. denied, --- U.S. ---, 126 S. Ct. 41 (October 3, 2005); see also, <u>Ford v. Georgia</u>, supra at 423-24; <u>Harris v. Reed</u>, supra at 262; <u>Oxford v. Delo</u>, supra at 743-44.

Moreover, even if the Petitioner's Due Process claim were not procedurally barred, we would, nonetheless, recommend that the claim be dismissed.  The State District Court explicitly noted that our Court of Appeals has directly addressed the very claim that the Petitioner has presented here, and concluded that "there is no clearly established Supreme Court law which holds that due process requires a jury trial in civil commitment proceedings or that incorporates the Seventh Amendment right to a jury for such cases."  <u>RA</u> at 110, citing <u>Poole v. Goodno</u>, supra.  In <u>Poole</u>, the Eighth Circuit Court of Appeals explained:

> [T]hat the Minnesota state court decision declining to grant a jury trial in [the petitioner]'s case is not contrary to, or an unreasonable application of, clearly established federal law

> as determined by the Supreme Court.  There is no clearly established Supreme Court law which holds that due process requires a jury trial in civil commitment proceedings or that incorporates the Seventh Amendment right to a jury trial for such cases.

Poole v. Goodno, supra at 710-11.

Of course, we recognize that a Federal Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Title 28 U.S.C. §2254(d).

The Supreme Court has determined that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two separate grounds on which a Federal Court may grant Habeas relief to claims adjudicated in the State Courts.  See, Williams v. Taylor, 529 U.S. 362 (2000).  The Court has explained, as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion

- 25 -

> opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

Id. at 412-13.

Here, our Court of Appeals has directly addressed the legal theory which encompasses the Petitioner's Due Process claim, and reached the same conclusion as the State District Court, and concluded that the conclusion was not contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court.   See, Poole v. Goodno, supra at 710-11.   Accordingly, the Petitioner's Due Process claim is without merit.

     c.   The Minnesota Constitutional Claim.   As recognized by the Respondent, the Petitioner appears to have exhausted his claim that is based on the Minnesota Constitution.  See, Memorandum in Support of Answer to Petition, at 17.  However, the Petitioner's claim is one solely premised on Minnesota law.  See, Petition, at 5 ("Petitioner's imprisonment/detainment is unconstitutional and void, being in contravention to Article 1, Section 4 of the 1857 Constitution of Minnesota

and its progeny, which incorporated jury trial rights that existed in the Minnesota Territory prior to adoption of the Minnesota Constitution."). As noted previously, "'[a] federal court may not re-examine a state court's interpretation and application of state law.'" McDonald v. Bowersox, supra at 592, quoting Schleeper v. Groose, supra at 737; see also, Brown v. Luebbers, supra at 466, citing Estelle v. McGuire, supra at 67-68. Accordingly, we recommend that the Petitioner's request for Habeas relief on his Minnesota Constitutional claim be dismissed.

In sum, we conclude that all of the Petitioner's claims are procedurally barred, by way of procedural default, or fail on their respective merits. Accordingly, we recommend that the Petition be dismissed, with prejudice.

NOW, THEREFORE, It is –

RECOMMENDED:

That the Petitioner's application for Habeas Corpus Relief under Title 28 U.S.C. §2254 [Docket No. 1] be dismissed with prejudice.

Dated:  February 15, 2006                    s/Raymond L. Erickson

                                             Raymond L. Erickson
                                             CHIEF U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than **March 6, 2006**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 6, 2006**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.